In the Matter of Ted Winston PRIMM, Shirley Ann Primm.

In the Matter of Su–Sing HENDERSON.

In the Matter of Randall Delbert HENDRICKS, Gloria Adele Hendricks.

In the Matter of Steven Richard BELL, Joanne Louise Bell.

In the Matter of Brenda Pauline MAHLER.

In the Matter of Charles Steven BAXTER.

In the Matter of John Joseph SIMPSON, Lanna Sue Simpson.

Bankruptcy Nos. 79–20802, 79–20803, 79–20854, 79–20855, 79–20873, 79–20876 and 79–20888.

United States Bankruptcy Court, D. Kansas.

Sept. 11, 1980.

Thomas M. Mullinix, Kansas City, Kan., for debtors in Nos. 79–20802 and 79–20803.

Geoffrey E. Lind, Kansas City, Kan., for creditors.

Roger L. Sherman, Overland Park, for debtors in Nos. 79–20854 and 79–20855.

James E. Kunce, Shawnee Mission, Kan., for debtor in No. 79–20873.

Jack N. Bohm, Kansas City, Mo., for creditor in No. 79–20873.

Howard L. Lyden, Kansas City, Kan., for SIC Corp. in No. 79–20873.

Robert E. Davis, Leavenworth, Kan., for debtor in No. 79–20876.

Douglas E. Wood, Lenexa, Kan., for debtors in No. 79–20888.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

The facts in each of these cases are not in dispute. The constitutionality of 11 U.S.C. § 522(f) as it applies to Chapter 7 and Chapter 13 of the Code is in question. Because of the issue of the constitutionality of the aforementioned section, this Court issued an Order of Certification in compliance with 28 U.S.C. § 2403 and notified the Attorney General of the United States, who subsequently intervened and filed a brief in support of the constitutionality of 11 U.S.C. § 522(f).

Briefs have been filed on behalf of all creditors herein, arguments have been made to the Court and all parties have agreed to the submission of these matters to the Court for its decision.

The Court, after examining all of the briefs, exhibits, files and pleadings, finds as follows:

## FINDINGS OF FACT

That on November 6, 1978, President Jimmy Carter signed into law the Bankruptcy Reform Act of 1978, which became effective on October 1, 1979.

The facts stipulated and agreed to being relevant by all parties herein in connection with the above captioned cases are as follows:

1. *In the Matter of Ted Winston Primm and Shirley Ann Primm:*

 a. On March 8, 1979, the debtors borrowed money from Avco Finance Company, executed a promissory note and pledged as security, all of their household goods;

 b. The creditor, Avco Finance, acquired a non–possessory non–purchase money security interest in said debtors' household goods as defined in 11 U.S.C. § 522(f)(2);

 c. The debtors filed their petition under Chapter 13 of Title 11 United States Code, and the household goods were claimed as exempt; and

 d. The debtors filed their application to avoid the lien of Avco Finance Company under 11 U.S.C. § 522(f)(2).

2. *In the Matter of Su–Sing Henderson:*

 a. On October 24, 1978, the creditor, GFC Corporation, loaned the debtor, Su–Sing Henderson, the sum of $3,284.00, of which $1,967.74 is still owed;

 b. On October 24, 1978, the creditor acquired a nonpossessory, nonpurchase money security interest in the debtor's household goods and furnishings;

 c. On October 4, 1979, the debtor filed a Petition for Relief under Chapter 13 of Title 11, United States Code;

 d. The debtor's household goods and furnishings subject to creditor's lien are used primarily for personal use of the debtor and were claimed as exempt; and

 e. On November 27, 1979, the debtor applied to have the creditor's lien avoided under 11 U.S.C. § 522(f)(2), on all of the household goods and furnishings.

3. *In the Matter of Randall Delbert Hendricks and Gloria Adele Hendricks:*

 a. On June 27, 1977, the creditor, Home Credit Company, now known as Barclays American Financial, loaned the debtors $4,176.00, of which $2,798.63 is allegedly still owed;

 b. On or about June 27, 1977, the creditor acquired a nonpossessory, non–

purchase money security interest in the debtors' household goods and furnishings;

c. On November 1, 1979, the debtors filed their voluntary petition for relief under Chapter 7 of Title 11, United States Code;

d. The debtors' household goods and furnishings subject to creditor's lien are used primarily for personal use of the debtors; and,

e. On December 28, 1979, the debtors filed their Application under 11 U.S.C. § 522(f)(2) to avoid the creditor's lien on the household goods and furnishings of the debtors.

4. *In the Matter of Steven Richard Bell and Joanne Louise Bell*:

a. On February 13, 1979, the creditor, Beneficial Finance Company, loaned the debtors, Steven and Joanne Bell, the sum of $3,168.00;

b. On or about February 13, 1979, the creditor also acquired a non–possessory nonpurchase money security interest in debtors' household goods and furnishings;

c. On November 1, 1979, the debtors filed their voluntary petition for relief under Chapter 7 of Title 11, United States Code;

d. The debtors' household goods and furnishings subject to the creditor's lien are used primarily for personal use of the debtors and were claimed as exempt; and,

e. On December 7, 1979, the debtors filed their Motion to Avoid Lien of Beneficial Finance on the debtors' household goods and furnishings, under 11 U.S.C. § 522(f)(2).

5. *In the Matter of Brenda Pauline Mahler*:

a. On November 14, 1978, creditor, S.I.C. Credit Corporation, loaned the debtor, Brenda Pauline Mahler, $2,033.83; on October 7, 1976, creditor, Household Finance Corporation, loaned the debtor, $3,674.47; and on July 3, 1979, creditor, Beneficial Finance Company of Kansas, Inc., loaned the debtor $667.12;

b. Each of the creditors above acquired nonpossessory, non–purchase money security interests in debtor's household goods and furnishings;

c. On November 7, 1979, the debtor filed her voluntary petition for relief under chapter 7 of Title 11 of the United States Code;

d. The debtor's household goods and furnishings subject to these creditors' liens are used primarily for her own personal use; and,

e. All of these Applications to avoid the liens on her household goods were filed on December 19, 1979, under 11 U.S.C. § 522(f)(2).

6. *In the Matter of Charles Steven Baxter*:

a. On or about November 10, 1978, creditor, Forbes Credit Union, loaned the debtor a certain sum of money on a stereo and acquired a nonpossessory non–purchase money security interest on said stereo which the debtor alleges is a household furnishing;

b. On November 19, 1979, the debtor, Charles Steven Baxter, filed a voluntary petition for relief under Chapter 7 of Title 11, United States Code;

c. The debtor's household goods herein (stereo) subject to the creditor's lien is used primarily for personal use of the debtor; and

d. On January 7, 1980, the debtor filed his Application to avoid the creditor's lien on the debtor's household goods (stereo), under 11 U.S.C. § 522(f)(2).

7. *In the Matter of John Joseph Simpson & Lanna Sue Simpson*:

a. On November 1, 1978, creditor, S.I.C. Credit Company, loaned these debtors $941.51; and on November 20, 1978, creditor, Household Finance Corporation loaned these debtors $3,275.50;

b. On November 1, 1978, S.I.C. Credit Company, acquired a nonpossessory, non–purchase money security interest in debtors' household goods and furnishings;

and on November 20, 1978, Household Finance Corporation, acquired a nonpossessory, non–purchase money security interest in debtors' household goods and furnishings;

c. On November 15, 1979, the debtors filed their petition for relief under Chapter 7 of Title 11, United States Code;

d. The debtors' household goods and furnishings alleged to be subject to the creditors' liens are used primarily for the personal use of the debtors; and

e. On December 14, 1979, the debtors filed their Motion to avoid the liens of S.I.C. Credit Company and Household Finance Corporation, under 11 U.S.C. § 522(f)(2).

### ISSUES INVOLVED

#### I.

WHETHER A SECURITY INTEREST CREATED PRIOR TO THE EFFECTIVE DATE OF THE BANKRUPTCY REFORM ACT OF 1978 CAN BE AVOIDED UNDER § 522(f) IN CHAPTER 7 CASES.

#### II.

WHETHER A SECURITY INTEREST CREATED PRIOR TO THE EFFECTIVE DATE OF THE BANKRUPTCY REFORM ACT OF 1978 CAN BE AVOIDED UNDER § 522(f) IN CHAPTER 13 CASES.

### CONCLUSIONS OF LAW

#### I.

11 U.S.C. § 522(f) reads in pertinent part as follows:

*"Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is*

\* \* \* \* \* \*

*(2) a nonpossessory, nonpurchase–money security interest in any–*

*(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;*

*(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor;*

*(C) professionally prescribed health aids for the debtor or a dependent of the debtor."*

The creditors in these combined matters do *not* assert that Congress did not intend that section 522(f) apply to liens created prior to October 1, 1979.

Local Rule 23 of the United States Bankruptcy Court for the District of Kansas, states as follows:

*"Matters begun pursuant to 11 U.S.C. § 522(f) (avoidance of judicial liens and non–possessory, non–purchase money liens) and 11 U.S.C. § 722 (redemption of personal property) shall be initiated by motion or application, be treated as a contested matter and shall be filed in and bear the same case number as the primary bankruptcy file."*

The creditors contend that they have been unconstitutionally deprived of a property right. They point to *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) as the controlling precedent in the combined matters here.

In *Louisville*, the constitutionality of the original Frazier–Lemke Act of 1934 (48 Stat. 1289) was in question. The purpose of the Act was to provide a means for farmers to prevent foreclosure of their mortgages. Under the Act, a bankrupt farmer was permitted to obtain from a court of bankruptcy a five year stay of state foreclosure proceedings. During this period the bankrupt was entitled to remain in possession of the property provided he pay a reasonable rent to the mortgagee. At the end of the five year stay, the debtor was entitled to pay into the court the judicially appraised price

of the property, and obtain the property free and clear of the original indebtedness. During the five year period, the creditor lost the rights available to him under the mortgage terms, but was entitled to reasonable rental value and the appraised price of the real estate.

The U.S. Supreme Court decided as follows, that the Frazier–Lemke Act as applied, violated the Fifth Amendment to the Constitution:

". . . *The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment. Under the bankruptcy power Congress may discharge the debtor's personal obligation, because, unlike the States, it is not prohibited from impairing the obligation of contracts. Compare Mitchell v. Clark, 110 U.S. 633, 643. But the effect of the Act here complained of is not the discharge of Radford's personal obligation. It is the taking of substantive rights in specific property acquired by the Bank prior to the Act . . ." Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 589, 55 S.Ct. 854, 863, 79 L.Ed. 1593 (1935).

The Court then concluded that certain substantive rights of the mortgagee had been taken, and that therefore ". . . *If the public interest requires, and permits, the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings, by eminent domain; so that, through taxation, the burden of the relief afforded in the public interest may be borne by the public." Louisville, supra,* at 295 U.S. 555, 602, 55 S.Ct. 854, 869, 79 L.Ed. 1593.

Also, in *Louisville Joint Stock Land Bank v. Radford, supra,* at 595, 55 S.Ct. at 866, the Supreme Court recognized the economic impact that the original Frazier–Lemke Act had on creditors:

*"Strong evidence that the taking of these rights from the mortgagee effects a substantial impairment of the security is furnished by the occurrences in the Senate which led to the adoption there of the amendment to the bill declaring that the Act 'shall apply only to debts existing at the time this Act becomes effective.' The bill as passed by the House applied to both pre–existing and future mortgages. It was amended in the Senate so as to limit it to existing mortgages; and as so amended was adopted by both Houses pursuant to the report of the Conference Committee. This was done because, in the Senate, it was pointed out that the bill, if made applicable to future mortgages, would destroy the farmer's future mortgage credit."*

Thus, the original Frazier–Lemke Act had such an economic impact on creditors that it was recognized that creditors would no longer make loans to those who might take advantage of its provisions, if future mortgages had been included within the Act.

Shortly after the Supreme Court's decision in *Louisville* the Frazier–Lemke Act was amended (49 Stat. 943) and the new Act was found to be constitutional in *Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke,* 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937). The Court, in *Wright,* recognized that the court of bankruptcy was given the power under the amended Act to sell the property under certain conditions within the stay period, which was reduced to three years. Thus, the bankrupt retained the right to remain in possession during the stay period, and to purchase the property at the appraised value at the end of that period (three years). The modification of the secured creditor's substantive rights was acknowledged by the Supreme Court, but was not considered as denying creditors and due process of law guaranteed by the Fifth Amendment of the United States Constitution.

It was also held in *Wright, supra; Tepper v. Chichester,* 285 F.2d 309 (9th Cir. 1961); *In Re Inland Dredging Corp.,* 61 F.2d 765 (2nd Cir. 1932), that since any exercise of the bankruptcy power impairs the obligation of contracts, such impairment is not to be taken in itself, as a denial of due process.

As in the *Wright* case, it is the opinion of this Court that the deprivation herein is not

to such a degree that it denies the creditors any rights guaranteed by the Fifth Amendment of the United States Constitution.

In *Hanover National Bank v. Moyses*, 186 U.S. 181, 192, 22 S.Ct. 857, 862, 46 L.Ed. 1113 (1902), and *Campbell v. Alleghany Corp.*, 75 F.2d 947, 953 (4th Cir. 1935), it was held that for the provisions of the Bankruptcy Act to violate the Fifth Amendment, they must be so grossly arbitrary and unreasonable as to be incompatible with fundamental law.

*Continental Bank v. Rock Island Ry.*, 294 U.S. 648, 680, 55 S.Ct. 595, 608, 79 L.Ed. 1110 (7th Cir. 1935), states as follows:

> "The Constitution, as it many times has been pointed out, does not in terms prohibit Congress from impairing the obligation of contracts as it does the states. But as far back as *Calder v. Bull*, 3 Dall. 386, 388, [1 L.Ed. 648], it was said that among other acts which Congress could not pass without exceeding its authority was 'a law that destroys or impairs the lawful private contracts of citizens.' The broad reach of that statement has been restricted (*Legal Tender Cases*, 12 Wall. 457, 549–550 [, 20 L.Ed. 287]); but the principle which it includes has never been repudiated, although the extent to which it may be carried has not been definitely fixed. Speaking generally, it may be said that Congress, while without power to impair the obligation of contracts by laws acting directly and independently to that end, undeniably, has authority to pass legislation pertinent to any of the powers conferred by the Constitution, however, it may operate collaterally or incidentally to impair or destroy the obligation of private contracts. *Legal Tender Cases, supra; Louisville & Nashville R. Co. v. Mottley*, 219 U.S. 467, 480–482, 484, 31 S.Ct. 265, 269–270, 271, 55 L.Ed. 297; *Highland v. Russell Car & Snowplow Co.*, 279 U.S. 253, 261, [49 S.Ct. 314, 316, 73 L.Ed. 688]. And under the express power to pass uniform laws on the subject of bankruptcies, the legislation is valid though drawn with the direct aim and effect of relieving insolvent persons in whole or in part from the payment of their debts. See *Hanover National Bank v. Moyses, supra*, 186 U.S. at p. 188, 22 S.Ct. at p. 860. So much necessarily results from the nature of the power, and this must have been within the contemplation of the framers of the Constitution when the power was granted." *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Euclid v. Ambler Realty Corp.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303; *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130.

The power to legislate on the subject of bankruptcies is conferred expressly upon Congress by the United States Constitution in Article I, Section 8, Clause 5, which states in pertinent part, as follows:

> "The Congress shall have the power * * to make all laws which [are] necessary and proper for carrying into execution the foregoing powers * * * "

■ The legislative history of § 522(f) (House Report No. 95–595, U.S.Code Cong. & Admin.News 1978, p. 5787) indicates that the "investment–backed expectations" of creditors in the type of secured goods in question here is less important than the coercion of repayment by the threat of foreclosure, an evil that § 522(f) was intended to address. It is stated in Collier on Bankruptcy, 15th ed., App. 2, at pg. 127 of said HR 95–595, as follows:

> ". . . Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.

In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for

household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, for they provide a credible basis for the threat, because the replacement costs of the goods are generally high. Thus, creditors rarely repossess, and debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make."

From the aforementioned legislative history, there is no doubt that it was the intent of Congress that 11 U.S.C. § 522(f) was to be applied retrospectively.

In *Hanover National Bank v. Moyses, supra*, it was also held that the grant of power to Congress to legislate on the subject of bankruptcies included the power to impair the obligation of contracts notwithstanding that individual states are forbidden to do so.

In *Lines v. Frederick, et al.*, 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124, the U.S. Supreme Court stated:

"... the basic purpose of the Bankruptcy Act to give the debtor a 'new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt....'"

In *Kansas State Bank & Trust v. James William Vickers*, 577 F.2d 683, 686 (10th Cir. 1978), the Court stated:

"One of the primary purposes of the Bankruptcy Act is the rehabilitation of an honest debtor by discharging his debts to afford him a fresh start in his economic life."

How can a debtor get a fresh start without at least the benefit of his household goods and furnishings, as Congress intended, free and clear of any encumbrances; and unless § 522(f) operates retroactively?

 I am aware that the bankruptcy courts are not uniform as to whether § 522(f) should operate retroactive, but this Court is of the opinion that the intent of Congress should be the rule, rather than the exception, and the burden of determining that the unconstitutionality of a statute rests on him who doubts the constitutionali-

ty of the act, and the burden of showing the unconstitutionality of an act should be resolved in its favor. *Metropolitan Casualty Insurance Co. v. Brownell*, 294 U.S. 580, 584, 55 S.Ct. 538, 540, 79 L.Ed. 1070 (1935), states as follows:

"It is a salutary principle of judicial decision, long emphasized and followed by this Court, that the burden of establishing the unconstitutionality of a statute rests on him who assails it, ...."

In the instant cases, the creditors, in the opinion of this Court, have not sustained the burden of establishing the unconstitutionality of 11 U.S.C. § 522(f).

## II.

 The issue herein as it appears in the *Primm* and *Henderson* cases is whether or not § 522(f) can be applied to Chapter 13 cases; and if so, can it be applied retroactively to the same extent as Chapter 7 cases of the Bankruptcy Reform Act of 1978.

11 U.S.C. § 103 states in pertinent part as follows:

"(a) Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, or 13 of this title."

Based on the aforementioned section of the Code, this Court concludes that § 522(f) of Title 11 applies to Chapter 13 cases just as it does to Chapter 7 cases and therefore, it is constitutional to avoid a lien where a security interest was created prior to the effective date of the Bankruptcy Reform Act of 1978.

For reasons set out above, this Court finds that 11 U.S.C. § 522(f) should be applied retroactively by the debtor to avoid nonpossessory, nonpurchase money security interests in household goods and furnishings claimed exempt by the debtors. As is required by BR 921(a), a separate judgment will be entered to this effect.