**In re Duane W. PARKER, Judith A. Parker, Debtors.**

**Max ADAMS, Plaintiff,**

v.

**Duane W. PARKER, Judith A. Parker, Defendants.**

**Bankruptcy No. 80–00701.**

United States Bankruptcy Court, M. D. Alabama.

March 30, 1981.

C. R. Lewis, Dothan, Ala., for plaintiff.

C. H. Espy, Jr., Dothan, Ala., for defendants.

OPINION ON MOTION TO AVOID LIEN

RODNEY R. STEELE, Bankruptcy Judge.

On October 20, 1980, the Debtors, Duane W. Parker and Judith A. Parker filed a Motion to Avoid Lien pursuant to Section 522(f) of the Bankruptcy Code of 1978 on certain exempt household goods and furnishings and tools of the trade pledged in a non-possessory nonpurchase-money security agreement to Headland National Bank.

An answer was filed October 27, 1980, by a secured creditor, Max Adams the petitioner in this case. He co-signed on the promissory notes of the Debtors to Headland National Bank and paid the sum of $8,162.46 due on the notes upon the Debtors default. The notes and security agreements were transferred and assigned to him by the bank. The petitioner claims rights by subrogation in the property the Debtors claim as exempt.

The petitioner claims that Section 522(f)(2), permitting a Debtor to avoid a non-possessory, nonpurchase-money security interest in personal property is unconstitutional as it applies to the security agreement in this case in that the lien was created prior to November 6, 1978, the date of the enactment of the Bankruptcy Reform Act of 1978. He argues that allowing the Debtors to avoid the security agreement and lien would amount to the impairment of a substantive right in specific property by legislation enacted after such right had been created and would amount to a retroactive deprivation of property rights without due process of law.

In the alternative the petitioner asks that if the Court finds Section 522(f) to be constitutional that we find that the property claimed exempt exceeds the value the Debtors are allowed to claim as exempt and also that a calculator and a 1968 Chevrolet pickup truck do not constitute tools of the trade and should not be allowed as exemptions.

On November 10, 1980, attorney for petitioner submitted citations in support of his position in a letter-brief.

On November 12, 1980, attorney for petitioner filed a Motion for Summary Judgment.

On January 6, 1981, the Bankruptcy Court certified to the Attorney General of

the United States the attack on the constitutionality of Section 522(f)(2) pursuant to 28 U.S.Code § 2403. The United States answered on February 3, 1981, and declined to formally intervene but submitted authorities on the position of the Attorney General.

## FACTS

Duane W. Parker and Judith A. Parker filed a bankruptcy on May 5, 1980. The Debtors received their discharge in bankruptcy on October 31, 1980.

Duane Parker operated Parker's Garage and Service Station in Headland, and in that connection on March 27, 1977, he borrowed $10,000.00 from the Headland National Bank. The note and security agreement was signed by Parker's Garage and Service Station by Max Adams and Duane Parker and Judy Parker and was endorsed by Max Adams.

The security agreement was signed in the same manner. The security agreement recited that the purpose of the loan was to finance the balance of the cost of opening the garage business and pledged as security for the debt a listing of garage equipment purchased on the same day for $4,510.50 and also certain property which Parker apparently had owned before, consisting of a 1969 Lincoln automobile and a 1953 Chevrolet truck and other vehicles valued at $4,500.00.

The security agreement also covered other tools and equipment "in our garage, also inventory of gasoline, oil and other supplies".

The security agreement also covered all household goods, furniture and appliances belonging to Mr. and Mrs. Duane Parker with a partial listing of those household goods and furnishings valued at $5,000.00.

Then on April 7, 1978, this debt was renewed by a note in the amount of $9,393.00. It was signed by Parker's Garage and Service Station by Duane Parker and Judy Parker and Max Adams and Max Adams endorsed this note. The security agreement was signed by Parker's Garage and Service Station by Duane Parker and Judy Parker. The security agreement recites the collateral as follows:

This note renews the balance of our note on our equipment, furniture, fixtures and household goods as per attached financing statement.

Then on April 19, 1979, the latter note was renewed by a note in the amount of $8,591.40. This note was executed by Duane Parker, Judy Parker and Max Adams and was endorsed by Max Adams. The security agreement was signed by Duane Parker, Judy Parker and Max Adams. The collateral described in the security agreement was:

This Note renews the balance of our note on our Equipment, Furniture, Fixtures and Household Goods as per attached financing statement.

The note and security agreement was transferred and assigned to Max Adams on August 14, 1980. So was the note and security agreement of April 7, 1978, and the one of April 19, 1979. Max Adams had on August 14, 1980, paid off the remaining balance owed by the Debtor to the Headland National Bank and now has by transfer and assignment whatever security interest or rights the Headland National Bank had as against the security property.

The property which Debtors seeks to hold as exempt and free of the lien of the Headland National Bank and Max Adams by subrogation is described as follows:

1. Household furniture, goods and appliances to wit:

   Living room suite; color television; stereo; two bedroom suites; Sears dishwasher; Sears dryer; washing machine; refrigerator; stove; dining room suite; and two deep freezers.

It is alleged that these items were non-purchase-money and non-possessory household goods and furnishings.

2. Tools and implements of the trade claimed as exempt:

   Tire changer; tire balancer; chain hoist (older of two); chain hoist troller (one); calculator; three parts bins;

motor manuels; portable hand grinder; ½ inch electric drill; ⅜ inch electric drill; ¼ inch hand air drill; two impact wrenches; 4 inch vice; assorted hand tools, wrenches and sockets; and one 1968 Chevrolet pickup truck with tool box used as a service vehicle for roadside repair.

It is alleged that these tools and equipment were owned prior to the time he obtained financing from the Headland National Bank under the above notes and security agreements.

## CONCLUSIONS

■ The Debtors are entitled to claim as exempt under the provisions of Section 522(d) the property which he lists in his Motion. The right to claim these exemptions under the Federal exemption provisions of the Bankruptcy Code were effective on the date when the Debtor filed his petition. The Alabama exemption statute of May 19, 1980, in which Alabama "opted out" of the Federal exemptions, did not become effective until May of 1980.

■ And Max Adams is entitled to be subrogated to the rights of the Headland National Bank. He was a co-debtor who has paid the debt owing to the creditor, Headland National and under the provisions of Section 509(a) of the Bankruptcy Code of 1978 he is entitled of that right to subrogation:

Section 509(a): Except as provided in sub-sections (b) and (c) of this section, an entity that is liable with the debtor on or that has secured a claim of a creditor and that pays such claim is subrogated to the rights of such creditor to the extent of such payment.

See also the provisions of the Code of Alabama 1975, sections 8–3–1 and 8–3–2 relating to the rights of joint makers of notes and bills and their rights as sureties upon the payment of the debt of other principals.

We conclude as to this property claimed as exempt by the Debtor, that Max Adams is subrogated to the extent of his payment, which in this case was the full balance remaining on the debt which he incurred with Duane Parker and Parker's wife.

Because we conclude below that the provisions of Section 522(f)(2) are nonconstitutional as applied to the security interest held by Max Adams by way of subrogation, we do not reach the other questions raised in the answer to the Motion, that is whether the value of the household goods and furnishings exceeds $200.00 per item and whether the 1968 Chevrolet pickup truck and the calculator are tools of the trade.

The creditor in this case seeks a determination that Section 522(f)(2) of the Bankruptcy Code is unconstitutional as applied to non-purchase-money security interests in certain personal property, given before the enactment date of the Code (November 6, 1978).

The ground for such contention is that a taking of that security interest by an avoidance power exercisable by Debtors under Section 522(f) is a deprivation of property rights without due process of law, forbidden by the Fifth Amendment to the United States Constitution.

This substantive due process violation occurs when Section 522(f) authorizes an unreasonable, unfair and excessive impairment of a recognized security interest, not unlawful or against public policy when given.

In this connection creditor cites *Louisville Joint Stock Land Bank v. Radford*,[1] in which the United States Supreme court held that the Frazier-Lemke Act[2] which gave farmers relief during the great depression was unconstitutional under the Fifth Amendment, because it so substantially impaired the security interests of real estate mortgageholders as to be a deprivation of property without due process, that is, arbitrarily, unreasonably, unfairly.

1. 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), reh. denied 296 U.S. 661, 56 S.Ct. 82, 80 L.Ed. 471.

2. Bankruptcy Act, § 75(s); Frazier-Lemke Act of June 28, 1934, chap. 869, 48 Stat. at L.1289.

· And this is undoubtedly the holding in *Radford*; Although a subsequent case, *Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke, Virginia*,[3] found the Frazier-Lemke Act, as subsequently amended, good as against Fifth Amendment attack. The Court held in *Vinton Branch* that although the realty mortgage-holder's rights were still impaired, they were not so substantially impaired by the operation of the Act as to constitute a deprivation.

The argument on the other side, adopted in numerous decisions,[4] is that Congress may impair the obligation of contracts under the Bankruptcy power in the Constitution [5] and that therefore it may impair contractually created security interests, including security interests created at any time (before or after the date of enactment of any Congressional Act which purports to impair contracts), and involving any kind of security interests, the only limitations being Congressional policy and possibly the outer limits spelled out in *Radford*.

The problem with the last proposition is that there is effectively no Fifth Amendment protection of security interests in Bankruptcy. Every security interest created by contract may be totally impaired if this argument is carried to its conclusion. The protection is only what Congress says it is. It is clear that this is not so. *Radford* and other Supreme Court cases clearly recognize Fifth Amendment protection of valid and validly acquired security property interests from deprivation. So does the Bankruptcy Code of 1978, when it refers to adequate protection. See Sections 361 and 362.

Which is not to say that such security property interests may not be impaired. They are impaired every day in Bankruptcy; they are extended, composed substituted and subordinated. They are swapped for other kinds of rights in other kinds of property. They are reduced to the value of the security.

But we have yet to find a case in which the courts have approved a total destruction of such rights, as ·in the case of Section 522(f), after they were legally acquired in accordance with recognized applicable laws. Such an extinguishment is a deprivation, and none of the arguments which we have read can make it anything less.

It is not possible to say, in the present state of the law, when impairment becomes so substantial that it amounts to a deprivation. Even *Radford*, in light of *Vinton Branch* and subsequent cases, is not clear.

■ But total destruction of a security interest legal, valid and enforceable when obtained, is certainly a deprivation of a property right protected by the Fifth Amendment.[6]

■ The conclusion finally is that Section 522(f)(2) of the Bankruptcy Code of 1978 is unconstitutional as applied to Max Adams' security interest in the property of these Debtors, which Adams claims here, where the security interest was given before November 6, 1978.

---

**3.** 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1936).

**4.** *In the Matter of Rutherford*, 4 B.R. 510, 2 C.B.C.2d 728 (Bkrtcy., S.D.Ohio, 1980) *In re Manning*, 11 B.R. 1, CCH Bankruptcy Rept. Para. 67, 714 (M.D.Fla.1980) *Matter of Primm*, 6 B.R. 142, 2 C.B.C.2d 1170 (Bkrtcy., D.Kan. 1980) *In re Bradford*, 6 B.R. 741, 3 C.B.C.2d 39 (Bkrtcy., D.Nev.1980).

**5.** U.S.Const. art. I, § 8.

**6.** See, In re Oldham, 3 C.B.C.2d 290 (1980).