**In the Matter of Chester Wayne SANDS, Debtor.**

**Chester Wayne SANDS, Plaintiff,**

v.

**BLAZER FINANCIAL SERVICES, INC. Barclaysamerican Credit, Defendants.**

**Bankruptcy No. B–81–01891 C–13. Adv. No. A–81–0496.**

United States Bankruptcy Court, M. D. North Carolina.

Nov. 24, 1981.

Richard M. Greene, Greensboro, N. C., appeared on behalf of the debtor.

## MEMORANDUM OPINION

RUFUS W. REYNOLDS, Bankruptcy Judge.

On August 20, 1981, Chester Wayne Sands filed under Chapter 13 of the Bankruptcy Code. The debtor's petition listed Blazer Financial Services, Inc. and Barclays-

American Credit as secured creditors with liens on the debtor's household goods. In the petition, the debtor indicated that he would move to have these liens declared void under 11 U.S.C. § 522(f) of the Code. A complaint to avoid the liens under § 522(f) was filed simultaneously with the petition in the Bankruptcy Court. The debtor alleged that the two creditors held nonpossessory, nonpurchase money security interests in his household and personal goods and that his interest in the goods did not exceed the value of exemptions available to him under § 522(b) and (d). These security agreements were executed after October 1, 1980, the effective date of the Bankruptcy Code.

Over 3500 Chapter 13 cases have been filed in the Middle District of North Carolina under the new Code and Sands is the first debtor who has attempted to use § 522(f) to avoid nonpossessory, nonpurchase money security interests in household and personal goods. This Court is of the opinion that the Chapter 13 debtor may not use § 522(f) to avoid these secured creditors' liens. In reaching this conclusion, this Court found it necessary to study the typical plans filed in this District, the plan filed in this case, and the equities of avoidance. Consideration of the latter supports the decision in this case even though there could be a technical interpretation of the Code which might support a different result.

Each District develops its own method of handling plans under Chapter 13 as long as the procedure stays within limits of the Bankruptcy Code. The wage earner plan in the Sands case, like 99% of all plans filed in this Court, contains the following provision for payment:

"The debtor will pay to the Trustee appointed by this Court from future earnings which are submitted to the supervision and control of the Court the sum of [*$170.00*] per *month* * for an initial period of 36 months. Said amount may be increased, reduced, extended or shortened by the Court. After payment of the costs of administration, the Trustee shall disburse the monies received as follows: (1) To priority and secured claims as may be approved and allowed by the Court. (Only the mortgages and security interests which are valid and recorded, if such is required, and which have adequate security value are normally approved by the Court, and monthly payments may be reduced in amount and extended in time in order to make the plan work); and (2) Balance of said monies to be applied to general claims."

* This amount to be increased ten percent per year.

In an interview with the debtor before confirmation of the plan, the Standing Trustee ascertains whether the plan as submitted by the debtor would give creditors as much money as they would receive if the case was under Chapter 7. The Standing Trustee makes this report to the Court at the confirmation hearing. The debtor does not make a claim for exempt property and Chapter 13 does not require a debtor to file such a request for exemptions. If such exemption is claimed, it is only for the purpose of being used as a yardstick to see if creditors would get more under the Chapter 13 plan than they would under Chapter 7. Under Chapter 13 the debtor retains all of his personal property except possibly a return of unpaid luxury items as required from time to time by the Court.

The Standing Trustee and the debtor determine the total amount which the debtor can reasonably afford to pay into the plan over a set period of months. Wage earner plans are either full-pay plans or compromise plans depending on whether there is a sufficient balance left after payments to the secured creditors to pay general unsecured creditors in full or part.

The effect of lien avoidance depends upon whether the debtor pays under a full-pay or compromise plan. The avoidance of a household goods lien is of no financial benefit to the debtor under a compromise payment plan. The Sands case is a compromise plan and will not mean any financial benefit to the debtor. Payments not made to the secured creditor after avoidance will go to the debtor's unsecured creditors. Under

a full-pay plan, avoidance of a household goods lien will save the debtor only the amount of interest which he would have paid on the secured claim while under the plan. Occasionally, a wage earner plan is approved which provides for payment of a fixed percentage of the debt owed the unsecured creditors. In such a case, the debtor would reap the benefits of avoidance of nonpossessory, nonpurchase money security interests in the household furnishings and goods.

Section 522(f) allows avoidance of liens on household goods only "to the extent that such lien impairs an exemption to which the debtor would have been entitled to under subsection (b) of this section." In a Chapter 13 case, the debtor keeps all of his property, and there is no exemption which is being impaired. Chapter 13 is unlike Chapter 7 where the debtor must claim his exemptions and keeps only his exempt property.

Another difficult aspect of lien avoidance which this Court has considered is the possible reinstatement of the avoided lien if the Chapter 13 case is not completed. In the event of dismissal of a Chapter 13 case, a creditor's lien which is wholly or partially avoided under § 522(f) will be reinstated under 11 U.S.C. § 349(b). The affected creditor will be returned to his pre-avoidance status legally. However, dismissal of a debtor's case after 4½ years under a plan and 20% payment to unsecured creditors would be of no practical benefit to the reinstated lien creditor. Such a creditor would probably have no security at the end of such period by reason of depreciation, loss, or other disposition of the property. Fairness and equity do not support this treatment of the secured creditors, especially since there is very little benefit, if any, to the debtor by avoidance of the household goods lien. Even if an interpretation of § 522(f) does allow lien avoidance in Chapter 13 cases, it is not feasible or practical to apply this Code provision to the Chapter 13 plans which have been described. Therefore, the security interests in this case should be recognized and paid through the plan according to the confirmation order and not avoided.

Let an order be entered amenable to this conclusion.