## In the Matter of James W. MATTSON and Shirley A. Mattson, Debtors.

### Bankruptcy No. EM13–81–02172.

United States Bankruptcy Court,
W. D. Wisconsin.

May 14, 1982.

### MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

Debtors James and Shirley Mattson entered into a series of retail sales contracts with the Gambles Store of Bloomer, Wisconsin, between August 27, 1980 and June 27, 1981. On each occasion Gambles retained and properly perfected a security interest in the items sold. On June 27, 1980, the Mattsons purchased a meat slicer from Gambles and executed a contract and security agreement which consolidated several earlier security agreements. Under

---

the consolidated agreement, the Mattsons owed Gambles a total of $3,677.92, which was secured by a microwave oven, a vacuum cleaner, a Savage rifle, a Remington rifle, a mower-tractor, a snowblower, a television set, a microwave cart, and the meat slicer. The security agreement provided the following method of allocating payments: "When items are purchased on different dates, the first purchased shall be deemed first paid for, and where items are purchased on the same date, the lowest priced will be deemed the first paid for."

On December 17, 1981, James and Shirley Mattson filed a petition in bankruptcy under chapter 13. In their schedule of secured debts, the Mattsons listed a debt of $3,467.92 to Gambles, secured by the two rifles and the various household goods.

On January 18, 1981, Gambles filed a proof of claim, listing the debt as $3,478.18. On the same date, Gambles filed an objection to the debtors' valuation of its security. The debtors had valued the security at $1,060.00, while Gambles asserted the true value to be at least $2,830.00.

On March 3, 1982, the Mattsons filed an amended petition under which they elected to avoid Gambles' liens pursuant to 11 U.S.C. § 522(f) on all items except the two rifles. The debtors proposed to pay $225.00 for the rifles.

A hearing was held on March 10, 1982, at which both the question of lien avoidance and the question of valuation were heard. The issues to be decided are:

1. May a chapter 13 debtor use 11 U.S.C. § 522(f) to avoid a lien on household goods?

2. If so is the lien in the instant case a purchase-money security agreement not subject to avoidance?

3. What is the proper value of the any property on which Gambles retains a lien?

Considering the issues in the order listed, note that 11 U.S.C. § 522(f) provides:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

In a letter brief received March 25, 1982, Gambles raised for the first time, the applicability of 11 U.S.C. § 522(f) to chapter 13 debtors. Gambles cited *In Re Sands*, 15 B.R. 563, 8 B.C.D. 424, 5 C.B.C.2d 832, Bankr.L.Rep. (CCH) ¶ 68,471 (Bkrtcy.M.D. N.C.1981), which held that because chapter 13 debtors retain all of their property they are not entitled to exemptions. Thus, 11 U.S.C. § 522(f), which allows lien avoidance only to the extent that a lien impairs an exemption is inapplicable. In *In Re Aycock*, 15 B.R. 728, 5 C.B.C.2d 856 (Bkrtcy.E. D.N.C.1981) the court found another basis for holding that a chapter 13 debtor cannot use 11 U.S.C. § 522(f). The court held that the general provision of 11 U.S.C. § 522(f) conflicted with the specific provision of 11 U.S.C. § 1325(a)(5)(B) which provides for the retention of the lien of a nonaccepting holder of a secured claim. Thus, by the rules of statutory construction, the general provision of 11 U.S.C. § 522(f) had to give way to the specific provision of 11 U.S.C. § 1325. The court also relied on the argument discussed in *Sands, infra*.

However, there are a number of cases which explicitly hold 11 U.S.C. § 522(f) applicable to chapter 13 cases. In *In Re Jordan*, 5 B.R. 59, 2 C.B.C.2d 635 (Bkrtcy.D.N. J.1980) the court relied on 11 U.S.C. § 103(a) for its finding that 11 U.S.C. § 522(f) applies to chapter 13 cases. "Sec-

tion 103(a) of the Code provides that Chapters 1, 3 and 5 of the Code apply in a case under Chapter 7, 11 *or 13* (emphasis supplied) of Title 11, with one irrelevant exception. Clearly the debtor can utilize Section 522(f) in Chapter 13." 2 C.B.C.2d at 637. The courts in *In Re Primm*, 6 B.R. 142, 2 C.B.C.2d 1170 (Bkrtcy.D.Kan.1980), *In Re Canady*, 9 B.R. 428, 7 B.C.D. 749, 4 C.B.C.2d 113, Bankr.L.Rep. (CCH) ¶ 67,906 (Bkrtcy.D. Conn.1981), *In Re Ohnstad*, 6 B.C.D. 6, 1 C.B.C.2d 494 (Bkrtcy.D.S.D.1980) and *In Re Jordan*, 5 B.R. 59, 6 B.C.D. 630, 2 C.B.C.2d 635 (Bkrtcy.D.N.J.1980), relied on this same argument to find that 11 U.S.C. § 522(f) applies to cases under chapter 13. *See also* 5 Collier on Bankruptcy ¶ 1300.81 (15th ed. 1981).

■ I am satisfied that a chapter 13 debtor can use 11 U.S.C. § 522(f) to avoid a nonpurchase-money nonpossessory security interest in household goods. However, I find blanket reliance on 11 U.S.C. § 103 disingenuous. In cases of a clear conflict with a specific chapter 7, 11 or 13 provision, the general provisions of chapters 1, 3 and 5 would necessarily give way. For instance, 11 U.S.C. § 521(3) requires the debtor to surrender to the trustee all property of the estate. 11 U.S.C. § 1306(b) nullifies this provision by allowing the debtor to retain possession of the property of the estate. Thus, if there is a clear conflict with a chapter 13 provision, 11 U.S.C. § 522(f) would not apply to chapter 13 debtors.

11 U.S.C. § 522(f) provides, in essence, that creditors holding certain types of security interests in certain kinds of property will not be treated as having secured claims. 11 U.S.C. § 1325(a)(5)(B) requires that holders of secured claims either accept the debtor's plan, retain their liens, or have their security returned to them. There does not seem to be any inherent conflict between these two sections. 11 U.S.C. § 1325(a)(5)(B) simply does not apply to creditors who have had their liens avoided under 11 U.S.C. § 522(f) and no longer have secured claims.

The argument in *In Re Sands* is somewhat harder to dispose of. First, it should be noted that the exemption portion of 11 U.S.C. § 522 appears not to conflict with any specific chapter 13 provisions. Thus, under the 11 U.S.C. § 103 analysis discussed earlier, 11 U.S.C. § 522 would apply to cases under chapter 13. However, this does not fully address the argument in *Sands.* Even if it is true that a chapter 13 debtor retains all of his property, unlike a chapter 7 debtor and does not need exemptions to provide him with the necessities of life and insure his fresh start, the argument that exemptions are only useful to a chapter 13 debtor because they allow him to avoid liens on certain kinds of property is not enough to support a conclusion that chapter 13 debtors are not entitled to exemptions. No less an authority than Collier on Bankruptcy accepts this view:

A chapter 13 debtor is entitled to claim the same exemptions allowed a chapter 7 debtor. Section 522 governs exemptions and provides greatly expanded federal exemptions which may be elected by a debtor in lieu of state exemptions. Since chapter 13 contemplates that the debtor is to retain both ownership and possession of all property of the estate, except as otherwise provided by the confirmed plan or by the order confirming the plan, exemptions are of less practical concern in chapter 13 proceedings than in liquidation cases under chapter 7. However, the debtor's avoiding powers and other rights granted under section 522 will be of importance in a chapter 13 case. 5 Collier on Bankruptcy ¶ 1300.81 (15th ed. 1981), (footnotes omitted).

Finally, it seems that the congressional purpose behind 11 U.S.C. § 522(f) is as relevant to chapter 13 debtors as to chapter 7 debtors. Congress believed that nonpossessory, nonpurchase-money security interests in household goods were of little value to the creditor except as a harassment tool. Usually such collateral is worth little on repossession and resale, but its loss could seriously hamper a debtor's fresh start. Although a chapter 13 debtor generally retains all his property, relief from the 11 U.S.C. § 362 stay can be sought in the same

manner as under chapter 7. More importantly, without 11 U.S.C. § 522(f) a creditor could use such a security interest to harass a debtor by objecting to his repayment plan. An objection to the plan under 11 U.S.C. § 1325(a)(5)(B) would then force the debtor either to provide that the lien be retained or to return the security. This is similar to the result Congress was attempting to avoid in the chapter 7 situation by enacting 11 U.S.C. § 522(f).

Having determined that 11 U.S.C. § 522(f) applies to this chapter 13 case the next issue to consider is whether Gambles' lien is a nonpurchase-money security interest in household goods. There appears to be no disagreement that the impaired property, with the exception of the rifles, constitutes household goods. The issue then is whether the purchase-money nature of Gambles' security interest has been destroyed by consolidation.

In *In Re Luczak*, 16 B.R. 743 (Bkrtcy.W. D.Wis.) this court considered the effect of consolidating various purchase-money security interests. It was held that where a $3,000.00 loan balance was combined with a $600.00 purchase-money loan for a microwave oven, the purchase-money character of the microwave loan was destroyed. The court was concerned with "the impossibility of apportioning the payments which have been made among the various purchase prices of the collateral." *Luczak* at 745. The court found that consolidation made it "impossible for a debtor to know when the purchase price of any given item [had] been paid." *Luczak* at 745.

The problem of apportioning payments does not appear to be present in the instant case. The security agreement clearly and fairly provides a method of apportioning payments among the collateral. Each piece of collateral under the agreement can be seen as securing its own purchase. The Mattsons have made $199.74 in payments. These payments must be credited against the purchase price of the mower-tractor, the first item purchased, together with the interest and finance charges. The total deferred price is $1,042.34. Thus, the Mattsons have paid off $199.74 of the debt secured by the mower-tractor.

The final issue is valuation of the property on which Gambles retains its liens. At the hearing Gambles presented testimony of Dennis Lotts, a former employee of Gambles. Mr. Lotts testified to fairly extensive experience in appraising consumer goods. Mr. Lotts did not actually view the tractor-mower or rifles but assigned a value to these items based on the assumption that they were in the same good condition as the other items. The debtors presented no expert appraisal testimony at the hearing. Instead Mr. Mattson testified as to his estimate of the value of his property. Mr. Mattson stated that he had never appraised property and that his estimates were only guesses. He was, however, familiar with all the items and testified that the lawn mower was not in working condition.

On the basis of the testimony presented and the weight given that testimony in light of the demeanor of the witnesses and my prior experience in receiving evidence of value of personal property, I find the reasonable value of the subject collateral to be:

| | | |
|---|---|---|
| 1. | Microwave oven and cart | $450.00 |
| 2. | Eureka Vacuum cleaner | 50.00 |
| 3. | Snowblower | 475.00 |
| 4. | Color television | 550.00 |
| 5. | Meat slicer | 20.00 |
| 6. | Tractor-mower | 300.00 |
| 7. | Savage rifle | 75.00 |
| 8. | Remington rifle | 250.00 |

Gambles' purchase-money security interest in the household goods is not avoidable under 11 U.S.C. § 522(f). Although Gambles and the Mattsons consolidated several purchase-money agreements, the problem of apportionment discussed in the *Luczak* case is not present. The security agreement provided a clear and fair way to apportion payments made by the Mattsons among the purchase prices of the various collateral. Therefore, Gambles retains its purchase-money liens upon the household items and the gun. Gambles must be treated as having a secured claim to the extent

of $2,170.00 under the Mattson's chapter 13 plan, and an unsecured claim for the remainder of the debt.

Judgment may be entered accordingly.