36 B.R. 924 (1984)
In re Gerald Allen FISK, Debtor.
Gerald Allen FISK, Plaintiff,
v.
ALLIS CHALMERS CREDIT CORPORATION, Defendant.
Bankruptcy No. 83 1166, Adv. No. 83 1087.
United States Bankruptcy Court, W.D. Michigan.
January 27, 1984.
*925 Daniel Hess, Grand Rapids, Mich., for debtor/plaintiff.
William Hubble, Grand Rapids, Mich., for defendant, Allis Chalmers Credit Corp.

OPINION

LIEN AVOIDANCE IN A CHAPTER 13 CASE

PARTNERSHIP ASSETS IN AN INDIVIDUAL PARTNER'S CHAPTER 13 PROCEEDING
LAURENCE E. HOWARD, Bankruptcy Judge.
This case raises numerous issues as to the applicability and scope of 11 U.S.C. § 522(f). The Court finds it necessary to address only two of these issues.
The facts generally are not in dispute. In October, 1976, Gerald and Gary Fisk, brothers involved in a farming operation, purchased a John Deere tractor, Model No. 4430, Serial No. 521238RC ("tractor") from Crooks Farm Power, Inc. This purchase was financed by the John Deere Credit Corporation and was fully paid off by the Fisks in November of 1980.
On October 30, 1981, the Fisks were in need of additional equipment, specifically what has been referred to as a "Corn Plus Hydro Combine" and "Corn Head" but lacked cash to make a required down payment. Consequently, the Fisks entered into an arrangement with Larry Hubbard & Sons, which is an equipment dealer for Allis Chalmers, whereby the Fisks sold their tractor to Larry Hubbard & Sons for the sum of $11,106.90. This sale is evidenced by a sales slip dated October 30, 1981, and signed by Gerald Fisk with the name of the seller labeled as "Fisk Farms". On the same date the Fisks repurchased the tractor from Larry Hubbard & Sons for the listed price of $11,107.90. This is also evidenced by a sales slip signed by Gerald Fisk with Gary and Gerald as the purchasers. The resale was financed by Allis Chalmers Credit Corporation, defendant herein, under a retail installment contract dated November 4, 1981, and signed by both Gary and Gerald. This instrument sets forth a purchase price of $11,106.90 with no down payment and a finance charge of $999.90. Under it, Larry Hubbard & Sons is granted a security interest in the tractor. This interest was assigned with full recourse to the Allis Chalmers Credit Corporation which filed a financing statement with the Kent County Register of Deeds on November 9, 1981. The defendant received the first of two payments under the retail installment contract and is presently owed $6999.90.
On the same date as the retail installment contract, the parties signed a leasing agreement on a "Corn Plus Hydro Combine" Model FII, Serial No. 46995 and a "Corn Head" Model A430, Serial No. 10251 with Gerald and Gary as the lessees and Larry Hubbard & Sons as the lessor. The $11,106.90 credit received from the defendant on the resale transaction was applied directly as the first installment payment under the leasing agreement which was to run for a 60 month term with a $11,106.90 payment due each year thereafter for four consecutive years.
The only disputed fact is the allegation by Gerald at a hearing held on this matter on October 31, 1983, that he made a $5,000 down payment by check under the leasing agreement. (transcript at 9). At that *926 hearing this Court rendered the factual finding that no such down payment was made. This finding is supported by the fact that Gerald did not present the alleged check to the Court on the hearing date, nor could he inform the Court who was the payee (transcript at 24) nor who was the transferee. (Id.). Further, no exhibit evidences any $5,000 down payment and both Robert Lee Dood, a financial representative of the defendant, and Lawrence Hubbard, owner of Larry Hubbard & Sons, both of whom were present at the November 4th transaction, testified that no check was received. (transcript at 30,46). Both parties eventually agreed that the sale/resale arrangement was a mere paper transaction to finance the leasing agreement; no monies or checks passed hands, nor did the tractor ever leave the possession of the Fisks. (transcript at 11, 31-33).
On May 9, 1983, Gerald Fisk filed for relief under Chapter 13 of the Bankruptcy Code and presently seeks to avoid the defendant's lien on the tractor pursuant to 11 U.S.C. § 522(f)(2)(B).[1] The defendant has raised several defenses to this action. After hearing argument on this matter on October 31, 1983, and upon considering the briefs and supplemental briefs filed by the parties, the Court makes the following conclusions of law.

I
THE LIEN AVOIDANCE PROVISIONS OF THE BANKRUPTCY CODE ARE AVAILABLE TO A CHAPTER 13 DEBTOR.
There is a split of authority as to whether a Chapter 13 debtor may utilize 11 U.S.C. § 522(f). Courts that have answered this issue in the negative have stressed that unlike a Chapter 7 debtor, a Chapter 13 debtor does not claim exemptions, at least not for the purpose of retaining his exempt property, see § 1306(b), § 1327(b), and thus a fortiori a Chapter 13 debtor cannot avoid impairment of exemptions. See In re Berry, 30 B.R. 36, 10 B.C.D. 1425 (Bkrtcy.E.D. Mich.1983); In re Corden, 19 B.R. 552, 6 C.B.C.2d 594 (Bkrtcy.M.D.Fla.1982); In re Sands, 15 B.R. 563, 5 C.B.C.2d 832 (Bkrtcy. M.D.N.C.1981); In re Aycock, 15 B.R. 728, 5 C.B.C.2d 856 (Bkrtcy.E.D.N.C.1981).
I do not find the rationale of the above cited cases persuasive. The prime Congressional intent in passage of § 522(d) was to promote a debtor's fresh start. See In re Fitzgerald, 29 B.R. 41 (Bkrtcy.E.D.Va.1983). While it is true that claiming exemptions in Chapter 13 does not serve the function of permitting the debtor to retain exempt property as in a Chapter 7 case, it nevertheless does serve to protect the Chapter 13 debtor's fresh start. In a Chapter 13 case the holder of an allowed secured claim retains his or her lien as a prerequisite to confirmation of a Chapter 13 plan. § 1325(a)(5)(B)(i). Avoidance of a lien to the extent of the Chapter 13 debtor's claimed exemption indirectly promotes the debtor's fresh start by increasing the chances that the payments required under the plan will be met and protecting against a dismissal and the threat of foreclosure.[2]
Moreover such an approach furthers the Congressional preference for filings under Chapter 13 rather than under Chapter 7. *927 See J. McLaughlin, Jr., Lien Avoidance by Debtors in Chapter 13 of the Bankruptcy Reform Act of 1978, 58 Am Bankr. L.J. 45 (1984).
In reversing a bankruptcy court's refusal to permit lien avoidance in Chapter 13 cases, the District Court of Delaware reasoned:
If this Court were to alter the balance established by Congress and make Chapter 7 more attractive to debtors because it alone enables them to protect their household goods against creditor's claims, it could well occur that more debtors would opt for Chapter 7 rather than Chapter 13, a much less desirable alternative from the creditor's point of view.
Baldwin v. Avco Financial Services, 22 B.R. 507, 9 B.C.D. 719 (D.C.Del.1982). The district court in Baldwin found nothing in § 522(f) which explicitly limits its application to Chapter 7 proceedings, nor found any provision in Chapter 13 which directly conflicts with § 522(f).[3] Therefore since § 103(a) expressly makes Chapters 1, 3, and 5 apply in a case under Chapter 7, 11, or 13, a Chapter 13 debtor retains lien avoidance power. This has been the holding of a case and the practice of this Court in the Western District of Michigan. See In re Lincoln, 26 B.R. 14 (Bkrtcy.W.D.Mich.1982); In re Hitts, 21 B.R. 158 (Bkrtcy.W.D.Mich.1982). See also In re Slykerman, 29 B.R. 82, 10 B.C.D. 1033 (Bkrtcy.E.D.Mich.1983); In re Thurman, 20 B.R. 978 (Bkrtcy.W.D.Tenn. 1982); In re Babineau, 22 B.R. 936, 9 B.C.D. 855 (Bkrtcy.M.D.Fla.1982); In re Coleman, 21 B.R. 832 (Bkrtcy.S.D.Tex.1982); In re Tackett, 21 B.R. 107 (Bkrtcy.D.N.M.1982); In re Barker, 20 B.R. 11 (Bkrtcy.D.S.C. 1982); In re Mattson, 20 B.R. 382 (Bkrtcy. W.D.Wis.1982) In re Colandrea, 17 B.R. 568 (Bkrtcy.D.Md.1982); In re Donato, 17 B.R. 708 (Bkrtcy.E.D.Va.1982); In re Walls, 17 B.R. 701 (Bkrtcy.D.W.Va.1982); In re Reeves, 17 B.R. 383 (Bkrtcy.W.D.La.1982); In re Canady, 9 B.R. 428 (Bkrtcy.D.Conn. 1981); In re Cohen, 13 B.R. 350 (Bkrtcy.E. D.N.Y.1981); In re Hagerman, 9 B.R. 412 (Bkrtcy.W.D.Mo.1981); In re Drummond, 17 B.R. 494 (Bkrtcy.E.D.Ark.1981); In re Bowles, 8 B.R. 394 (Bkrtcy.S.D.Ohio 1981); In re Alexander, 11 B.R. 313 (Bkrtcy.S.D. Ohio 1981); In re Jones, 20 B.R. 258 (Bkrtcy.W.D.Ky.1981); In re Young, 10 B.R. 17 (Bkrtcy.S.D.Cal.1980); In re Primm, 6 B.R. 142 (Bkrtcy.D.Kan.1980); In re Snow, 8 B.R. 113 (Bkrtcy.S.D.Ohio 1980); In re Brahm, 7 B.R. 253 (Bkrtcy.S.D.Ohio 1981); In re Jordan, 5 B.R. 59 (Bkrtcy.D.N. J.1980); In re Lantz, 3 B.R. 77 (Bkrtcy.S.D. Ohio 1980); In re Ohnstad, 1 C.B.C.2d 494 (Bkrtcy.D.S.D.1980); In re Hines, 3 B.R. 370, 6 B.C.D. 198 (Bkrtcy.D.S.D.1980); In re Saberman, 3 B.R. 316 (Bkrtcy.N.D.Ill.1980).

II
THE JOHN DEERE TRACTOR IS A PARTNERSHIP ASSET WHICH IS NOT PROPERTY OF THE INDIVIDUAL PARTNER'S CHAPTER 13 ESTATE AND HENCE IS NOT SUBJECT TO LIEN AVOIDANCE
It is a fundamental principle of bankruptcy law that a partnership entity cannot file for relief under Chapter 13 which under 11 U.S.C. § 109(e) is limited to an individual with regular income. See In re Tegtmeyer, 31 B.R. 555, 8 C.B.C.2d 1372, 1376 (Bkrtcy.S.D.Ohio 1983); In re Krokos, 12 B.R. 520 (Bkrtcy.S.D.N.Y.1981). As a corollary to this principle, partnership assets may not be administered in an individual partner's Chapter 13 case. See In re Tegtmeyer, supra; In re Johnson, 19 B.R. 371 (Bkrtcy.D.Kan.1982); 3 Collier on Bankruptcy ¶ 522.05[3] at 522-20522-21 (15th ed.) 1983. "[I]f the partnership is found to be a partnership by agreement, *928 even informal agreement, then a separate entity exists and the assets of that entity would be exempt from a case under chapter 13." House Report No. 95-595, 95th Cong., 1st Sess. 320 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6277.
Gerald Fisk testified on October 31, 1983, that the tractor in question was originally purchased by both himself and his brother Gary as a partnership asset (transcript at 23) although they never entered into a formal, written partnership agreement. After the tractor was sold to Larry Hubbard & Sons it was repurchased by Gerald and Gary, both of whom signed the retail installment contract dated November 4, 1981. In a dissolution proceeding filed September 9, 1982, in the Circuit Court for the County of Kent, Gerald denied the existence of a partnership. Judge Boucher rendered an opinion on November 29, 1983, wherein he determined that "[i]n 1974, . . . the parties orally agreed on a partnership at will to operate a milk farm. Plaintiff [Gary] contributed cash, eight cows, and most of the machinery. Defendant [Gerald] contributed cash, cows, a tractor, spreader and his farm . . .". Gary Fisk v. Gerald Fisk, No. 82-38124-CB (November 29, 1983). Numerous courts and commentators have recognized, as did Judge Boucher, that under the doctrines of partnership by estoppel or partnership by informal agreement, a written partnership agreement is not an indispensable element in determining that a partnership existed. See In re Tegtmeyer, supra; In re Johnson, supra; In re Krokos, supra; In re Ward, 6 B.R. 93 (Bkrtcy.M.D. Fla.1980); B. Weintraub, A. Resnick, Bankruptcy Law Manual ¶ 9.04, at 9-8 (1981). Judge Boucher specifically found that the John Deere tractor in question constituted a partnership asset in which each brother held a 50% interest. This factual finding is binding on this Court under the doctrine of collateral estoppel.
In short, Gerald did not and cannot show that he possesses an interest in the tractor in his individual capacity as debtor as required under § 522(f). The argument by plaintiff that Gerald's continued use of the tractor implies his commitment to assume its liability and therefore the tractor is part of his Chapter 13 estate is without merit. "Chapter 13 was not intended to protect partnership assets from partnership creditors". In re Krokos, supra at 522. Accordingly, Gerald Fisk cannot avoid Allis Chalmers Credit Corporation's lien on the John Deere tractor.
Disposition of this issue renders it unnecessary for this Court to address the other issues raised by the parties including whether the defendant held a purchase money security interest in the tractor.
Allis Chalmers Credit Corporation has filed a motion for lift of stay which will be rescheduled by the Court.
An Order may enter in accordance with this Opinion.
NOTES
[1] Section 522(f)(2)(B) provides:

§ 522. Exemptions.
(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is
(2) a nonpossessory, nonpurchase-money security interest in any
(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor;
[2] Although it is true that in some Chapter 13 cases avoidance of liens may result in a "bonus" to the debtorsparing himself some periodic payments to secured creditors under the plan with little or no corresponding increase in payment to unsecured creditorssee R. Peeples, Five Into Thirteen: Lien Avoidance In Chapter 13, 61 N.C. Law Rev. 849, 858 (1983), the structure of the Code mandates an all or nothing application of § 522(f) in a Chapter 13 case. This Court feels more comfortable following the clear mandate of § 103(a) unless and until Congress sees fit to modify current law.

It is one thing to conclude that section 522(f) does not, after all, fit well into Chapter 13. It is quite another to refuse to apply it, when confronted with the roadblock of section 103(a). Several courts have offered reasons for bypassing section 103(a). None are completely convincing.
Id. at 864.
[3] The court found the language of § 1325(a)(5) consistent with § 522(f) since to the extent a lien is avoided under § 522(f) it cannot constitute an allowed secured claim which must be retained under the plan pursuant to § 1325(a)(5)(B)(i).