**In re Charles Wayne REEVES, and Elizabeth Ann Reeves, Debtors.**

**Edward Joseph BENOIT, Plaintiff,**

**v.**

**Charles Wayne REEVES, Elizabeth Ann Reeves, and Michael Joseph Barnett, Defendants.**

**Bankruptcy No. 480–00104–LC.**
**Adv. No. 481–0048.**

United States Bankruptcy Court,
W. D. Louisiana,
Lake Charles Division.

Feb. 8, 1982.

Revan N. Rougeau, Lake Charles, La., for Benoit.

William N. Cox, Lake Charles, La., for the Reeves.

Jack Caskey, Lake Charles, La., for Barnett.

OPINION

RODNEY BERNARD, Jr., Bankruptcy Judge.

On October 8, 1981 a hearing was held upon the complaint of Edward Joseph Benoit, the plaintiff herein, to clear title to property purchased from the Chapter 13 debtor. The complaint was opposed and a counter claim was filed.

STATEMENT OF FACTS

In June of 1977, Michael Barnett rented a home from Mr. and Mrs. Reeves in Beaure-

gard Parish at $175.00 a month. At the time Mr. Barnett rented this property he was told by Mr. and Mrs. Reeves that he could also rent two barns and 30 acres for a total of $300.00 a month. After about 2 months Mr. Barnett expressed an interest in purchasing the home and about 3 acres. After some discussion Mr. Reeves agreed to sell Mr. Barnett the house, the two barns and the entire 30 acres, if Mr. Barnett could obtain—the necessary financing. Mr. Barnett offered to give Mr. Reeves a down payment of $2,000.00. Rather than taking the $2,000.00, Mr. Reeves told Mr. Barnett to use the money to make all necessary improvements and repair the roof. Mr. Barnett began to pay $300.00 a month and to use the entire 30 acres. Sometime in 1979 Mr. Reeves and Mr. Barnett entered into a written agreement. This instrument was backdated to June 1977 in order that all the rent paid to date would be applied to the purchase price of the property. This instrument was signed by Mr. Reeves, Mr. Barnett and one witness. The agreement contained a property description and the following: ·

I agree to sell for $35,000.00 financed at 8% interest at $300.00 a month.

At trial Mr. Reeves stated the following concerning his intentions in entering into this agreement:

...Now at this time Gulf he has Gold Coast that's supposed to furnish the money to him. (referring to Mr. Barnett) And what I gave him is a description of what I would do in it if he could come up with the money on it. That's all this was. This wasn't anything that I had drawn up to sell the property to him to finance it personally. He was supposed to have someone to come in there. And I had a witness in there—this was drawn up in the warehouse here in Lake Charles. He come by here and I told him that I'd sell the property to him if he could get the money. And this is what this was drawn up for. (sic). (At page 16.)

At trial Mr. Barnett also gave his interpretation of the effect and the intention of the agreement:

Q– Did you ever—Mr. Barnett, did you ever sign an instrument that you thought was a sale?

A– Absolutely. The instrument you have there . . . (at page 44.)

No further instruments or agreements were executed between Mr. Reeves and Mr. Barnett. Mr. Barnett made a notation on each monthly check he wrote indicating it was "not rent, house note." Mr. Barnett was never able to obtain financing due to a heart condition he later contracted.

On March 6, 1980 Mr. and Mrs. Reeves filed for relief under Chapter 13 of the Bankruptcy Code. Mr. Barnett filed the instrument executed between him and Mr. Reeves in the courthouse records of Beauregard Parish on June 6, 1980. An order confirming the sale of the property in question to Edward Joseph Benoit, the plaintiff herein, was signed by this court on October 16, 1980.

Mr. Benoit now asks this court to remove the cloud on his title caused by the recordation of the instrument executed between the debtor and Mr. Barnett. Mr. Barnett opposed the complaint and asserts he is the owner of this property by virtue of the agreement as well as the written instrument entered into between him and the debtors.

## CONCLUSIONS OF LAW

Though the trustee is not a party to this action, it seems appropriate to discuss the rights and powers of the trustee vis a vis a disposition of property by the debtor, or a purported disposition by the debtor as revealed by the facts of this case.

Under Louisiana Civil Code article 2266, sales or other dispositions of immovable property which are not recorded, are valid as to the parties, but are null and void as to third persons until proper recordation. Article 2246 of the Louisiana Civil Code validates such contracts regarding immovable property as to bona fide purchasers and creditors only when registered in the manner required by law.

Upon filing a petition under Chapter 13 of the Bankruptcy Code, a trustee is appointed. Section 544 of the Bankruptcy Code grants the trustee the rights of a hypothetical bona fide purchaser of real property as well as the rights of a creditor that has extended credit to the debtor at the time of the commencement of the case, and that obtains a judicial lien on all property, regardless of whether or not such a creditor on bona fide purchaser actually exists. The relevant subsections of article 544 are as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

Clearly, under section 544 the trustee may avoid the lien or interest on this property which Mr. Barnett is claiming.

The question of whether 11 U.S.C. § 544 is applicable to a case under Chapter 13 then arises. This question stems from the fact that the trustee under Chapter 13 is in a distinctly different position than a trustee in a case under Chapter 7. In a case under 13 the debtor remains in possession of all his property, and manages his assets. In a case under Chapter 7 the trustee takes possession of all the property of the estate and manages the property. 11 U.S.C. § 103 of the Bankruptcy Code delineates the applicability of the various sections of the Code; this section reads as follows:

(a) Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, or 13 of this title . . .

There is no provision in Chapter 13 that would limit this power of the trustee. However, section 544 does not purport to "ipso facto" render void transactions between the debtor and others. See 544–13 Coll. on Bankruptcy. The trustee must assert these rights as he sees fit. In this case there has been no attempt by the trustee to avoid the contract between the debtors and Mr. Barnett.

Since this court has found the instrument executed between Mr. Reeves and Mr. Barnett was recorded after the debtors filed their petition under Chapter 13 of the Bankruptcy Code, this court now finds the recordation is null and void as to the debtors as well as the trustee. 11 U.S.C. § 362 governs the operation of the automatic stay. The pertinent provisions of that section read as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; . . .

In his answer and counterclaim Mr. Barnett alleges the agreement dated June 15, 1977 was a sale between the parties, due to the concurrence of the elements necessary for a sale: the thing, the price, the consent of the parties. He further alleges that at the time of the purported bankruptcy sale the property in question was owned by him and, for that reason, this property did not form any part of the estate of the debtors. Mr. Barnett thus asks that the validity of his purchase be recognized and the purchase made by Mr. Benoit on November 3, 1980 be declared null and void.

Bankruptcy code section 541 governs what, if any, property or interest of the debtors becomes property of the estate; this section reads as follows:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case...

Regardless of the nullity of the recordation of the written instrument, the debtors' interest in the property in question may be subject to the claim of Mr. Benoit. Louisiana Law mandates the conceptual separation of the written and the verbal agreements of contracting parties. This principal is contained in the Louisiana Civil Code article 1762:

The contract must not be confounded with the instrument in writing by which it is witnessed. The contract may subsist, although the written act may, for some defect, be declared void; and the written act may be good and authentic although the contract it witnesses be illegal. The contract itself is only void for some cause or defect determined by law.

This court must determine the effect of the verbal agreement between the debtor and Mr. Barnett. At the trial of this case both Mr. Barnett and Mr. Reeves testified concerning the verbal agreement they had made. Mr. Barnett unequivocally considered the agreement to be one of sale. Mr. Reeves testified the agreement he made was one of an offer to sell. The vagueness of the written instrument renders it unhelpful in determining the intent of the parties. This court thus finds there was no "meeting of the minds" between the parties, therefore one of the essential elements to any contract, consent, is not satisfied.

It follows, therefore, that no contract existed between Mr. Reeves and Mr. Barnett. The sale to Mr. Benoit is valid, and should be made free and clear of the cloud created by the written instrument filed in the courthouse records of Beauregard Parish, as well as any future claims Mr. Barnett may have to this property as a result of the agreement he has attempted to make with Mr. Reeves.

This court also finds that the estate of Mr. Reeves is liable to the full extent of all repairs and improvements, as well as payment of any taxes on the property that Mr. Barnett may have made. Mr. Barnett must make an accounting of all costs of improvements, taxes, as well as a reasonable allowance for labor in improvements he may have made himself.

Judgment in accordance with the above will be signed upon submission. All costs of this proceeding are to be divided equally between all the parties herein.