In re Sidney THURMAN, Debtor in Chapter 13.

Sidney THURMAN, Plaintiff,

v.

CIT FINANCIAL SERVICES, Defendant.

In re Alvin Ray PARIS, Sr. and Mary Katherine Paris, Debtors in Chapter 13.

Alvin Ray PARIS, Sr. and Mary Katherine Paris, Plaintiffs,

v.

TRANSOUTH FINANCIAL CORPORATION, Defendant.

In re Mary Ann WIGGINS, Debtor in Chapter 13.

In re Eurvie WILSON and Veria Wilson, Debtors in Chapter 13.

Eurvie WILSON and Veria Wilson, Plaintiffs,

v.

CITY FINANCE COMPANY, Defendant.

Bankruptcy Nos. 82–20292, 82–20428, 82–20591 and 82–21421.
Adv. Nos. 82–1910, 82–1983 and 82–2222.

United States Bankruptcy Court, W. D. Tennessee, W. D.

June 18, 1982.

---

Philip F. Counce, Patrick Johnson, Ben Wages, Memphis, Tenn., for debtors/plaintiffs.

Charles A. Walt, John Duck, W. Ray Jamieson, Memphis, Tenn., for creditors/defendants.

WILLIAM B. LEFFLER and DAVID S. KENNEDY, Bankruptcy Judges.

In these Chapter 13 cases, consolidated for the purpose of this opinion, the debtors each sought to avoid non-purchase money security interests held by the various creditors in household furnishings, goods et cetera under 11 U.S.C. § 522(f). Each creditor objected to the utilization of § 522(f) in Chapter 13 proceedings, contending there are no exemptions for the liens to impair in a wage earner case and that use of § 522(f) conflicts with § 1325(a)(5)(B). The debtors allege that, by virtue of § 103(a), § 522(f) is applicable at bar and that no real conflict exists between § 522(f) and § 1325(a)(5)(B). At no time has any party raised any constitutional issues in regard to the use of § 522(f) in Chapter 13 cases. After hearings in Open Court and consideration of the memoranda of the parties, the Court, en banc, finds that § 522(f) may be used to avoid liens in Chapter 13 proceedings.

There is no dispute at bar that the security interests are non-possessory and non-purchase money as to consumer goods and thus avoidable under § 522(f) if it applies to Chapter 13. For this reason the Court will not detail the facts of each case.

Section 522, found in Chapter 5 of the Bankruptcy Code, establishes the federal exemptions, provides for state exemption opt-out provisions, and also, *inter alia*, provides for lien avoidance. That subsection states that

(T)he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a non-possessory, non-purchase money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books or tools of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

11 U.S.C. § 522(f) (1979). This section applies even though Tennessee has opted out of the federal exemption scheme of the Code. *In re Farris*, 8 B.R. 186 (Bkrtcy.E.D. Tenn.1981). The legislative history of the Bankruptcy Reform Act of 1978 indicates that the major concerns in regard to consumer debtors were that "(o)verbroad *security interests on all of a consumer's household and personal goods,* reaffirmations, limited State exemption laws, and litigation over dischargeability of certain debts have all contributed to the consumer debtor's post-bankruptcy plight." H.R.Rep. No.595, 95th Cong., 1st Sess. 117 (1977) (emphasis added), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6077. In passing the Reform Act, Congress declared that:

This bill attempts to cure these inadequacies in the Bankruptcy Act and to prevent the frequent problems confronting consumer debtors that have occurred both in the bankruptcy court and out. First, the bill simplifies, expands, and makes more flexible wage earner plans, called plans for Individuals with Regular Income, under the bill. Second, many of the provisions in the current bankruptcy law that enable private action to undo the beneficial effects of bankruptcy are changed. Third, the debtor is given adequate exemptions and other protections to ensure that bankruptcy will provide a fresh start. The premises of the bill with respect to consumer bankruptcy are that use of the bankruptcy law should be the last resort; that if it is used, debtors should attempt repayment under Chapter 13, Adjustment of Debts of an Individual with Regular Income; and finally, whether the debtor uses Chapter 7, Liquidation, or Chapter 13, Adjustment of Debts of an Individual, bankruptcy relief should be effective, and should provide the debtor with a fresh start.

Id. at 117–118, U.S.Code Cong. & Admin. News 1978, at 6078, 6079. In its discussions of the fresh start policy, the House Report noted the overuse of the non-purchase money lien on household items, stating:

One of the most important and widely abused devices available to the large credit institution is a blanket security interest in household necessities. As a practical matter, our files reflect the fact that household goods are rarely seized. The reason for this restraint on the part of creditors is twofold. Household goods have little or no direct economic value in the resale market. The mark-ups on low cost furniture and appliances almost always exceed one hundred percent. When financing costs are added, it becomes clear that any intrinsic value which such commodities may have will never come close to off-setting the credit liability secured thereby. The second reason has to do with the unfavorable publicity which attends seizure of intimate family furnishings such as bedding and kitchen wares.

This does not however mean that blanket security interests in household property are not used. Virtually every creditor we investigated retained such a lien in all appropriate contracts.

\* \* \* \* \* \*

Based on the cases we examined in our investigation, and on the findings and recommendations prepared by the National Commission on Consumer Finance, we believe that there is no justification whatsoever for the common practice of requiring debtors to pledge all of their household property to small lenders. For this reason, we support the proposed unwaivable exemption with respect to assets in the bankrupt estate of an individual consumer. We can conceive of few practices in today's consumer market which are more debilitating and demoralizing than the repeated threat to seize the household necessities of an insolvent and his family, items, which, as a practical matter, have little if any economic value to the creditor. These kinds of threats do not enhance the economic situation of either party. They subvert the specific policy which underpins personal bankruptcy.

\* \* \* \* \* \*

We would recommend, therefore, that in preparing a floor with respect to certain property in the consumer inventory, the Committee consider spelling out certain kinds of property which all consumers will be able to retain in bankruptcy without qualification. The list should include, at the very least, those household necessities which may be shown to have little or no economic value to creditors and which are of paramount importance to a consumer and his family. Such property should survive liens of all types.

Id., at 171–72, U.S.Code Cong. & Admin. News 1978, at 6132, 6133. After noting that such blanket security interests coupled with boilerplate exemption waivers were often signed by the debtors, in ignorance of the consequences, Congress declared that § 522(f)

allows the debtor, after bankruptcy has been filed, and creditor collection techniques have been stayed, to undo the consequences of a contract of adhesion, signed in ignorance, by permitting the invalidation of nonpurchase money security interests in household goods. Such security interests have too often been used by over-reaching creditors. The bill eliminates any unfair advantage creditors have. H.Rep.No.595, 95th Cong., 1st Sess. 127 (1977), U.S.Code Cong. & Admin.News 1978, 6088.

In none of the discussions of the abuse of such blanket liens on household goods does the legislative history differentiate between liquidation and wage earner plans. It is clear that the fresh start policy embodied in the Code applies equally to Chapter 13 as it does to Chapter 7. It would be incongruous to deny debtors using rehabilitation plans, rather than liquidation, the same avoiding powers available to Chapter 7 debtors in order to provide the fresh start policy embodied throughout the Code. Congressional intent was to invalidate such liens regardless of the Code Chapter utilized by the debtor. Section 103 of the Code is definitive on this point when it states:

> Except as provided in section 1161 of this title, Chapters 1, 3 and 5 apply in a case under 7, 11, or 13 of this title.

11 U.S.C. § 103(a) (1979). The legislative history observes that: "The general provisions that apply no matter which chapter a case is filed under are found in Chapters 1, 3, and 5. Subsection (a) makes this explicit, with an exception for Chapter 9." S.Rep. No.989, 95th Cong., 2d Sess. 28 (1978); H.Rep.No.595, 95th Cong., 1st Sess. 316 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5814, 6273. See also, S.Rep. 989, 95th Cong., 2d Sess. 3 (1978); H.Rep.No.595, 95th Cong., 1st Sess. 6, U.S.Code Cong. & Admin. News 1978, pp. 5789, 5967 (1977) ("Chapter 1 (General Provisions), Chapter 3 (Case Administration) and Chapter 5 (Creditors, the Debtor and the Estate), apply generally to all cases under Chapter 7 (Liquidation), Chapter 11 (Reorganization), and Chapter 13 (Adjustment of Debts of an Individual with Regular Income).").

The creditors at bar contend that exemptions play no part in Chapter 13 proceedings and therefore § 522(f) cannot apply, regardless of the mandates of § 103(a). However the wage earner's exemptions are important to a Chapter 13 plan. First, the Court must know the value of the exemptions in order to apply the best interests of creditors' test found in § 1325(a)(4) prior to confirmation of a plan. Second, this best interest test, taking into account the debtor's exemptions must also be applied to any attempt to modify the plan under § 1329. Third, exemptions may be important should the debtor's waiver of discharge envisioned by § 1328(a) be executed. Fourth, should the wage earner obtain a hardship discharge under § 1328(b), the exemptions must be considered by the Court in its determination as to whether the test of § 1328(b)(2) has been met. Finally, should a hardship discharge be granted, the discharge is only as to unsecured debts and the debtor would again be in a reaffirmation posture as to those debts secured by the nonpurchase money security interests in household goods. For these reasons this Court disagrees with the conclusions reached in In re Sands, 15 B.R. 563 (Bkrtcy. M.D.N.C.1981), In re Aycock, 15 B.R. 728 (Bkrtcy.D.N.C.1981), and In re Corden, 19 B.R. 552, 553 (Bkrtcy.M.D.Fla.1982) that no exemptions may be claimed by wage earners and thus § 522(f) is inapplicable. Instead, this Court is in accord with In re Ohnstad, 6 B.C.D. 6 (Bkrtcy.D.S.D.1980) in which the Court found that a Chapter 13 debtor is entitled to claim the same exemptions allowed to a Chapter 7 debtor. 6 B.C.D. at 7. See also, 5 Collier on Bankruptcy Para. 1300.81 (15th ed, 1981). As observed in Collier, supra, merely because the exemptions are of less practical concern in Chapter 13 due to the fact § 1306 allows retention by the debtor of all property of the estate, does not mean no exemptions may be claimed.

This Court also rejects the reasoning of Sands, Aycock and Corden that application of § 522(f) due to § 103(a) is a direct conflict with § 1325(a)(5)(B)'s retention of lien

requirement. A simple examination of the wording of § 1325(a)(5)(B) reveals no conflict between it and § 522(f) lien avoidance. Subsection (a)(5)(B)'s lien retention requirement is only applicable "with respect to each *allowed* secured claim." (emphasis added). If a security interest is avoided under § 522(f), it is not an "allowed" secured claim for the purposes of confirmation because it is disallowed as to the household goods and other items delineated under § 522(f). *See, In re Hagerman*, 9 B.R. 412, 414 (Bkrtcy.W.D.Mo.1981) ("The constraint of § 1325(a)(5) can be dealt with by concluding that, after lien avoidance, the creditor is not secured and there is therefore, no 'allowed secured claim provided for by the plan.' "). Thus this Court alines itself under the majority and better reasoned view that, by virtue of § 103(a), § 522(f) lien avoidance is permissible in Chapter 13 proceedings. *See, In re Hagerman, supra; In re Canady*, 9 B.R. 428 (Bkrtcy.D.Conn.1981); *In re Snow*, 8 B.R. 113 (Bkrtcy.S.D.Ohio, 1980); *In re Brahm*, 7 B.R. 253 (Bkrtcy.S.D. Ohio 1980); *Matter of Lantz*, 7 B.R. 77 (Bkrtcy.S.D.Ohio 1980); *Matter of Jordan*, 5 B.R. 59 (Bkrtcy.D.N.J.1980); *In re Ohnstad*, supra. *See also*, Lee, *Chapter 13 nee Chapter XIII*, 53 Am.Bankr.L.J. 303, 307 & 312 (1979). The Court also observes that ample protection will be given the creditor with an avoided lien in case of dismissal by § 349(b)(1)(B)'s reinstatement of liens avoided under § 522(f).

It is therefore

ORDERED by the Court en banc that the debtors' requests to avoid liens under § 522(f) are granted.